**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| WILLIAM MORGAN, an Individual, | |
| Plaintiff, | |
| v. | Case No.: CIV-25-36-JFH-GLJ |
| IMANI EXPRESS, LLC, a Foreign Corporation; | |
| MUEZ GEBREHIWOT HAGDU, an Individual, | |
| Defendants. | |

**PLAINTIFF'S MOTION TO COMPEL**

Respectfully submitted,

SMOLEN | LAW, PLLC

Donald E. Smolen, II OBA #19944
611 S. Detroit Ave.
Tulsa, OK 74120
P: (918) 777-4LAW (4529)
F: (918) 890-4529
don@smolen.law
*Attorney for Plaintiff*

October 15, 2025

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ....................................................................................... iii

COMPLIANCE WITH LCvR37.1 ............................................................................... 1

RELEVANT FACTS ..................................................................................................... 1

DISCOVERY REQUESTS AT ISSUE ........................................................................ 2

SCOPE OF DISCOVERY ............................................................................................ 3

ARGUMENTS AND AUTHORITIES ......................................................................... 5

    I.    OWNERSHIP OF THE TRUCK AND TRAILER ........................................................ 5

        A.  28 U.S.C. § 2254(d)(1) ............................................................... 9

        B.  28 U.S.C. § 2254(d)(2) ............................................................. 10

    II.   VEHICLE INSPECTION RECORDS FOR THE TRUCK
       (DEFENDANT IMANI RESPONSE TO RFP NO. 3) ............................................... 6

    III.  DEFENDANT HADGU'S DRIVER QUALIFICATION FILE AND DRIVING HISTORY
       (DEFENDANT HADGU RESPONSES TO INTERROGATORY NOS. 7, 12; RFP NO. 13;
       DEFENDANT IMANI RESPONSES TO INTERROGATORY NO. 18; RFP NOS. 2, 3, 4, 22,
       23,24, 25) ............................................................................................ 6

        A.  Defendant Hadgu's Driving History ................................................ 6

        B.  Defendant Hadgu's Driver Qualification File .................................. 8

        C.  Defendant Hadgu's Personnel File ................................................ 12

    IV.  FACTS, INCIDENT REPORTS AND ROUTE DATA REGARDING THE COLLISION AT ISSUE
       (DEFENDANT HADGU RESPONSE TO INTERROGATORY NO. 13; DEFENDANT IMANI
       RESPONSE TO INTERROGATORY NO. 8) ........................................................... 15

    V.   OTHER ACCIDENTS INVOLVING DEFENDANT'S VEHICLES
       (DEFENDANT IMANI RESPONSE TO RFP NO. 18) ............................................. 15

    VI.  FACTUAL BASES FOR DEFENDANTS' AFFIRMATIVE DEFENSES
       (DEFENDANT HADGU RESPONSES TO INTERROGATORY NOS. 15, 21; RFP NO. 16;
       DEFENDANT IMANI RESPONSES TO INTERROGATORY NOS. 9, 22) ..................... 16

VII.    DEFENDANT IMANI'S FINANCIAL CONDITION IS DISCOVERABLE. (DEFENDANT IMANI RESPONSE TO RFP NO. 27) ............................................................. 18

VIII.   THE COURT SHOULD ORDER DEFENDANT HADGU TO VERIFY HIS DISCOVERY RESPONSES. .................................................................................................................... 19

CONCLUSION ............................................................................................................................. 19

CERTIFICATE OF SERVICE ..................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*AG Equip. Co. v. AIG Life Ins. Co.*,
    No. 07-CV-556-CVE-PJC, 2008 WL 5205192
    (N.D. Okla. Dec. 10, 2008) ...................................................................................3, 16

*Blount v. Wake Elec. Membership Corp.*,
    162 F.R.D. 102 (E.D.N.C. 1993) ...................................................................................12

*Burke v. Ability*,
    291 F.R.D. 343 (D.S.D. May 31, 2013) ...................................................................................14

*Capstick v. Allstate Ins. Co.*,
    998 F.2d 810 (10th Cir. 1993) ...................................................................................18

*Cardtoons, L.C. v. Major League Baseball Ass'n*,
    199 F.R.D. 677 (N.D. Okla. 2001) ...................................................................................18, 19

*Cooper v. Bd. of Cnty. Comm'rs of Grady Cnty.*,
    1996 OK CIV APP 85, 921 P.2d 376 ...................................................................................7, 16

*Cox v. Swift Transportation Co. of Arizona & LLC*,
    No. 18-CV-0117-CVE-JFJ, 2019 WL 3719887
    (N.D. Okla. Aug. 7, 2019) ...................................................................................7

*Cudd Pressure Control, Inc. v. New Hampshire Ins. Co.*,
    297 F.R.D. 495 (W.D. Okla. Feb. 6, 2014) ...................................................................................14

*Hawaii Corp. v. Crossley*,
    88 F.R.D. 518 (D. Haw. 1980) ...................................................................................12

*Howard v. Segway, Inc.*,
    Case No. 11-CV-688-GFK-PJC, 2013 WL 869955
    (N.D. Okla. March 7, 2013) ...................................................................................4

*Jarrell v. Haaji*,
    No. CIV-23-37-PRW, 2025 WL 1482019
    (W.D. Okla. May 22, 2025) ...................................................................................5

*Kunneman Properties LLC v. Marathon Oil Co.*,
    No. 17-CV-456-GKF-JFJ, 2019 WL 5188355
    (N.D. Okla. Oct. 15, 2019) ...................................................................................3, 16

*Leon v. FedEx Ground Package Sys., Inc.*,
    313 F.R.D. 615 (D.N.M. 2016) ...................................................................................16

*Miller v. Doctor's Gen. Hosp.*,
    76 F.R.D. 136 (W.D. Okla. 1977) ...................................................................................4

*Mills v. Grotheer*,
    1998 OK 33, 957 P.2d 540 ........................................................................................13

*Oklahoma v. Tyson Foods, Inc.*,
    262 F.R.D. 617 (N.D. Okla. 2009) ...........................................................................18

*Oklahoma. v. Tyson Foods, Inc.*,
    No. 05-CV-329-GKF-PJC, 2009 WL 10271831
    (N.D. Okla. March 13, 2009) ...............................................................................18,19

*Spaeth v. Union Oil Co. of California*,
    710 F.2d 1455 (10th Cir.1983) .............................................................................18, 19

*St. Louis-San Francisco Ry. Co. v. Powell*,
    1963 OK 209, 385 P.2d 465 ......................................................................................16

**Statutes**

49 CFR § 382.401 .......................................................................................................10

49 CFR § 390.5 ...........................................................................................................14

49 CFR § 391.51 ................................................................................................10, 11, 12

49 CFR § 396.11(1)(4) ...................................................................................................6

Fed. R. Civ. P. 11(b) ....................................................................................................18

Fed. R. Civ. P. 26 ........................................................................................................12

Fed. R. Civ. P. 26(b)(1) .............................................................................................3, 4

Fed. R. Civ. P. 33(a)(2) ...........................................................................................17, 18

Fed. R. Civ. P. 33(b)(3) ...............................................................................................19

Fed. R. Evid. 401 .......................................................................................................3, 4

Plaintiff William Morgan moves this Court to compel Defendants to fully respond to Mr. Morgan's discovery requests. Specifically, Mr. Morgan seeks an order compelling Defendant Hadgu to provide verifications to his interrogatory responses, respond to Plaintiff's interrogatories completely and to produce: (1) the inspection records for the truck involved in the collision; (2) ownership information regarding the truck and trailer involved in the collision; (3) the full driver qualification file for Defendant Hadgu pursuant to 49 C.F.R. 391.15; (4) the complete incident reports for the Collision at issue in this case; (5) other accidents involving Defendants; (6) the factual bases for Defendants' affirmative defenses; and (7) tax returns for Defendants.

In support of this motion, Mr. Morgan states the following:

## **COMPLIANCE WITH LCvR37.1**

Mr. Morgan certifies that counsel for the parties conferred regarding the issues raised herein on August 15, 2025. This conference was conducted in good faith; however, the parties were unable to agree on the issues identified herein, necessitating this motion.

## **RELEVANT FACTS**

On or about September 17, 2024, Mr. Morgan was stopped at a traffic control light on westbound Highway 51 and the Creek Turnpike off-ramp in Wagoner County, OK (the "Intersection"). Simultaneously, Defendant Hadgu, driving a truck for Defendant Imani Express, LLC ("Defendant Imani"), was directly behind Mr. Morgan, traveling in the same direction and approaching the Intersection. As Defendant Hadgu neared the Intersection, he failed to yield to Mr. Morgan, who was at a complete stop, resulting in a severe rear-end collision with Mr. Morgan. The Oklahoma Highway Patrol cited Defendant Hadgu for failure to yield. As a result of the collision, Plaintiff suffered significant bodily injuries, property damage, and incurred considerable medical expenses and financial losses.

1

Mr. Morgan filed this action on February 6, 2025, alleging negligence against Defendant Hadgu and Negligent Hiring, Training, Supervision, Retention, Maintenance, and Entrustment against Defendant Imani. [Dkt. No. 2.] On April 28, 2025, Mr. Morgan served his first set of discovery on Defendant Hadgu. [Ex. 1: Plaintiff's First Set of Discovery to Defendant Hadgu.] On June 3, 2025, Mr. Morgan served his first set of discovery on Defendant Imani. [Ex. 2: Plaintiff's First Set of Discovery to Defendant Imani.] Defendant Hadgu responded in June 2025[1] and Imani responded on July 17, 2025. [Ex. 3: Defendant Hadgu's Responses; Ex. 4: Defendant Imani's Responses.] As set forth herein, Defendants' Responses are plainly insufficient, and Mr. Morgan respectfully submits that the Court should compel Defendants to respond to Mr. Morgan's Requests fully.

## DISCOVERY REQUESTS AT ISSUE

At issue in this motion are Mr. Morgan's discovery requests directed at:

1.      The **ownership of the truck and trailer** involved in the Collision. [Ex. 3: Defendant Hadgu Responses to Interrogatory No. 1; Ex. 4: Defendant Imani Response to Interrogatory No. 3; Response to Request for Production ("RFP") No. 20];

2.      The **vehicle inspection records** for the Truck and Trailer involved in the collision. [Ex. 4: Defendant Imani Response to RFP No. 12];

3.      The **full driver qualification file and other relevant documents regarding Defendant Hadgu's driving history**. [Ex. 3: Defendant Hadgu Responses to Interrogatory Nos. 7, 12; RFP No. 13; Ex. 4: Defendant Imani Responses to Interrogatory Nos. 10, 15, 18; RFP Nos. 2, 3, 4, 22, 23, 24, 25];

---

[1]     It is unclear when Defendant Hadgu served its responses. The date in the certificate of service is blank. [Ex. 2: Defendant Hadgu's Responses at p. 18.]

4.      **Incident reports and route data** regarding the collision at issue. [Ex. 3: Defendant Hadgu Response to Interrogatory No. 13; Ex. 4: Defendant Imani Responses to Interrogatory Nos. 8, 10];

5.      **Other accidents involving Defendants' vehicles** [Ex. 4: Defendant Imani Response to RFP No. 18.];

6.      The **factual bases for Defendants' affirmative defenses**. [Ex. 3: Defendant Hadgu Responses to Interrogatory Nos. 15, 21; RFP No. 16; Ex. 4: Defendant Imani Responses to Interrogatory Nos. 9, 22.];

7.      Defendant Imani's **financial condition**. [Ex. 4: Defendant Imani Response to RFP No. 25.].

In addition to the above, Defendant Hadgu has failed to provide verification for his interrogatories as required under Fed. R. Civ. Pro. 33.

## SCOPE OF DISCOVERY

Under Rule 26 of the Federal Rules of Civil Procedure, parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Kunneman Properties LLC v. Marathon Oil Co*., No. 17-CV-456-GKF-JFJ, 2019 WL 5188355, at *2 (N.D. Okla. Oct. 15, 2019) (quoting Fed. R. Civ. P. 26(b)(1)). "Discoverable information need not be admissible at trial." *Id*. (citing Fed. R. Civ. P. 26(b)(1)). "At the discovery phase of litigation 'relevancy' is broadly construed and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *AG Equip. Co. v. AIG Life Ins. Co*., No. 07-CV-556-CVE-PJC, 2008 WL 5205192, at *1 (N.D. Okla. Dec. 10, 2008) (citation omitted). Evidence is relevant if it has any tendency to make a fact of consequence in the action more or less

probable than it would be without that evidence. Fed. R. Evid. 401. Discovery is generally relevant and discoverable if it seeks information pertinent to allegations in the pleadings and is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

In responding to discovery, the response "must either state that inspection and related activities will be permitted as requested or state an objection to the request, *including the reasons*." *Howard v. Segway, Inc*., Case No. 11-CV-688-GFK-PJC, 2013 WL 869955, at *2 (N.D. Okla. March 7, 2013) (emphasis by the Court). "Objections must be specific and fully explained, or else the requesting party is unable to evaluate the objection's merits and determine whether to challenge it." *Id*. at *3 (citation omitted). General or boilerplate objections, offered without explanation, constitute a waiver of the responding party's right to object. *Id*. (citations omitted).

"The answers to interrogatories must be responsive, full, complete and unevasive." *Miller v. Doctor's Gen. Hosp.*, 76 F.R.D. 136, 140 (W.D. Okla. 1977). "The answering party cannot limit his answers to matters within his own knowledge and ignore information immediately available to him or under his control." *Id*. (citations omitted). "If an appropriate interrogatory is propounded, the answering party will be required to give the information available to him, if any, through his attorney, investigators employed by him or on his behalf or other agents or representatives, whether personally known to the answering party or not." *Id*. (citations omitted). "If the answering party lacks necessary information to make a full, fair and specific answer to an interrogatory, it should so state under oath and should set forth in detail the efforts made to obtain the information." *Id*. (citations omitted).

## ARGUMENTS AND AUTHORITIES

### I.    OWNERSHIP OF THE TRUCK AND TRAILER

Mr. Morgan issued interrogatories and document requests seeking to discover the ownership of the truck and trailer involved in the collision that harmed Mr. Morgan. Mr. Morgan sought the following from Defendant Imani:

> **INTERROGATORY NO. 3:** Were You the owner of the Tractor and Trailer that were being operated by Mr. Hadgu at the time of the Accident? If not, state each and every factual basis in support on Your response and identify the owner by name, address and telephone number.

[Ex. 4: Defendant Imani Responses at Interrogatory No. 3.] In response, Defendant Imani noted that Amazon owned the trailer and Defendant Hadgu owned the tractor. [*Id.*] However, these responses are unverified. *See infra.* In the RFPs, Mr. Morgan sought:

> **REQUEST NO. 20:** All documents regarding the ownership of the Tractor and Trailer.

[Ex. 4: Defendant Imani Responses at RFP No. 20.] In its July 17, 2025, response, Defendant Imani stated it was "working to obtain copies of the respective titles and will supplement upon receipt." [*Id.*] To date, however, **Defendant Imani has produced no such titles**.

These documents are plainly relevant to Mr. Morgan's negligent entrustment claims. *Jarrell v. Haaji*, No. CIV-23-37-PRW, 2025 WL 1482019, at *6 (W.D. Okla. May 22, 2025) ("ownership of the tractor-trailer . . . is relevant to Plaintiffs' negligent entrustment claim"). Defendants recognized the relevance by agreeing to produce the same. These documents are also necessary because of the confusing relationship presented by Defendants' production. Defendants produced an indecipherable independent contractor agreement that, in one section, referred to Defendant Hadgu as the owner of the tractor [Ex. 5: Agreement at IMANI 062], while simultaneously referring to him as a lessee and to Susan Zeslus as the lessor.[2] [*Id.*] These as-yet-

---

[2]     Plaintiff's Exhibit 5 is marked as "CONFIDENTIAL" and will be produced under seal.

unproduced title documents are vital to understanding both the ownership of the truck and the relationship between the Defendants. As such, the Court should require Defendant Imani to produce these ownership documents and supplement its discovery response6s to clarify the ownership.

## II.    VEHICLE INSPECTION RECORDS FOR THE TRUCK (DEFENDANT IMANI RESPONSE TO RFP NO. 13)

Mr. Morgan sought driver daily vehicle condition reports for the tractor and trailer:

> **REQUEST NO. 13:** Complete and clearly readable copies of all driver daily vehicle condition reports submitted by any driver(s) on the Tractor and/or Trailer, from September 17, 2022, through September 17, 2024, in the possession, custody or control of Defendant.

[Ex. 4: Defendant Imani Responses at RFP No. 13.] Defendant Imani responded "none" despite requirements under the Federal Motor Carrier Safety Regulations to retain the same. *See* 49 CFR § 396.11(a)(4).

These documents are plainly relevant on their face. Motor carriers must keep records of daily vehicle inspection reports. 49 CFR 396.11(a)(4). These are documents Defendant Imani is required to maintain. However, it is either shirking the responsibility of production to another Defendant (who also has not produced) or stating that it has none in violation of federal law. The Court should therefore order Defendants to produce these required records.

## III.    DEFENDANT HADGU'S DRIVER QUALIFICATION FILE AND DRIVING HISTORY (DEFENDANT HADGU RESPONSES TO INTERROGATORY NOS. 7, 12; RFP NO. 13; DEFENDANT IMANI RESPONSES TO INTERROGATORY NO. 18; RFP NOS. 2, 3, 4, 22, 23, 24, 25)

### A. **Defendant Hadgu's Driving History**

Regarding Defendant Hadgu's driving history, Mr. Morgan sought the following from Defendant Hadgu:

**INTERROGATORY NO. 7:** Identify any moving violations, traffic citations, or other infractions issued to You by any law enforcement agency related to your driving, both for personal and commercial purposes, over the past ten (10) years. Please provide the date of each citation, the issuing law enforcement agency, the specific offense for which you were cited, and the outcome of the citation.

**INTERROGATORY NO. 12:** Identify all motor vehicle accidents and collisions in which You have been involved, both privately and commercially, and specifically state the date, exact street locations, the names and last known contact information of any passengers or witnesses, your position in the vehicle (i.e., whether you were the driver or a passenger), any injuries You sustained in each incident, a summary of the facts pertaining to each, and the contact information for any insurance company, insurance adjuster, attorney, or other representative acting on your behalf.

**REQUEST NO. 13:** Produce color copies of the front and back of Your current driver's licenses, both personal and commercial, and, if different, copies of Your licenses that were in effect on September 17, 2024.

[Ex. 3: Defendant Hadgu Responses at Interrogatory Nos. 7, 12; RFP No. 13.] Defendant Hadgu either gave incomplete answers which did not address the interrogatory asked, *see* Responses to Interrogatory Nos. 7 and 12, or promised additional production which has not occurred. *See* Responses to Interrogatory No. 7 and RFP No. 13.

Defendant Hadgu's driving history is plainly relevant to both the negligence claims and the negligent entrustment claims. *Cox v. Swift Transportation Co. of Arizona & LLC*, No. 18-CV-0117-CVE-JFJ, 2019 WL 3719887, at *9 (N.D. Okla. Aug. 7, 2019) (prior driving history relevant in negligent entrustment case); *St. Louis-San Francisco Ry. Co. v. Powell*, 1963 OK 209, ¶ 11, 385 P.2d 465, 469 (evidence of other accidents admissible to show dangerous condition); *Cooper v. Bd. of Cnty. Comm'rs of Grady Cnty.*, 1996 OK CIV APP 85, ¶¶ 5-7, 921 P.2d 376, 378 (trial court erred in not considering other incidents to show notice of dangerous condition; prior accidents did not have to be identical).

Defendant Hadgu did not provide the full factual background regarding the moving violations. [Ex. 3: Defendant Hadgu Response at Interrogatory No. 7.] He noted a couple of

violations but did not provide information for each and promised supplementation that has not happened. [*Id.*] Defendant Hadgu did provide a copy of the citation for the one, but not the outcome of the same as sought by the Interrogatory. Similarly, Defendant Hadgu did not fully respond to the interrogatory regarding other accidents. [*Id.* at Interrogatory No. 12.] While he provided the crash report for the accident, [Ex. 6: Crash Report], he did not provide a summary of facts in his own words regarding what happened in the accident. The Court should order Defendant Hadgu to produce this highly relevant information and supplement these responses.

Similarly, Defendant Hadgu should be ordered to produce the additional production promised [Interrogatory No. 7 and RFP No. 13]. It has been more than three months since Defendant Hadgu responded to discovery. The Court should permit no further delay.

### B.  <u>Defendant Hadgu's Driver Qualification File</u>

Mr. Morgan issued requests regarding Defendant Imani's driver qualification file for Defendant Hadgu:

> **<u>REQUEST FOR PRODUCTION NO. 2:</u>**  Complete and clearly readable copies of the "Driver Qualification File" maintained by Imani Express, on Mr. Hadgu along with any other documents contained therein, in their precise state of existence on the date of the accident.
>
> **<u>REQUEST FOR PRODUCTION NO. 3:</u>**  Complete and clearly readable copies of any and all other documents added to Mr. Hadgu's "Driver Qualification File" from date of employment to the present date, as presently maintained by Defendant. Please identify and produce such documents separate and apart from the documents requested in Request for Production No. 2 herein.

[Ex. 4: Defendant Imani Responses at RFP Nos. 2, 3.] Mr. Morgan further defined the "Driver's Qualification File" as it is defined in the Federal Motor Carriers Safety Regulations, Parts 382, 383, 391:

These records include, but are not limited to, the following:

a)      Any pre-employment questionnaires or other documents secured from Mr. Hadgu prior to employment.

b)      Any and all completed applications for employment secured both before and/or after the actual date of contract or employment of Mr. Hadgu.

c)      All medical examinations, drug tests and certification of medical examinations inclusive of expired and non-expired documents relative to Mr. Hadgu.

d)      All of Mr. Hadgu's annual violation statements which should include one for each twelve months of contract or employment with Imani Express, in this case.

e)      All actual drivers' motor carrier road tests administered to Mr. Hadgu.

f)      All actual drivers' motor carrier written tests administered to Mr. Hadgu.

g)      All road and written test certificates issued by Imani Express, or any other motor carrier or organization to Mr. Hadgu regardless of the date issued or the originator of such certificates.

h)      All past employment inquiries sent to or secured from former employers along with all responses received from former employers inclusive of all U. S. mail, personal contact or telephone inquiries and results directed to or received by Defendant from past employers of Mr. Hadgu.

i)      All inquiries to and answers received from any organization in reference to the driver's license record of traffic violations and accidents directed to and/or received by Defendant, or other organizations on behalf of Defendant, from state or federal governmental agencies, or other organizations, relative to Mr. Hadgu's traffic and accident records.

j)      Copies of all road or written test cards, medical cards, motor carrier certification of driver qualification cards and any other motor carrier transportation related cards in the possession of Defendant regardless of card issuance date or origin. This specifically includes cards, as previously described herein, issued by other motor carriers to Mr. Hadgu and/or his co-drivers presently in their personal possession.

k)      All annual reviews, file reviews or file summaries and related documents found in the driver qualification file of Mr. Hadgu.

l)      All documents relative to any drug testing of Mr. Hadgu, including but not limited to the post collision drug/alcohol report on Mr. Hadgu as required by 49 C.F.R. 382.303 and all related documents generated by Defendant following the accident, and,

m)      Any and all other contents of Mr. Hadgu's driver qualification file, regardless of subject, form, purpose, originator, receiver, title or description.

[Ex. 2: Defendant Imani Requests at pp. 7-8.] Because of that definition and the requirements of federal law, Mr. Morgan also sought Defendant Hadgu's medical records in Defendant Imani's possession:

**REQUEST FOR PRODUCTION NO. 22:** All medical records in Your possession, custody, or control, including drug or alcohol tests, for Mr. Hadgu from the date of his employment through September 17, 2024.

**REQUEST FOR PRODUCTION NO. 23:** All documents in Your possession, custody, or control, regarding any medications prescribed to and/or being taken by Mr. Hadgu from September 17, 2022, through September 17, 2024.

**REQUEST FOR PRODUCTION NO. 24:** All medical records in Your possession, custody, or control, for or relating to Mr. Hadgu arising from or relating to the Accident.

[Ex. 4: Defendant Imani Responses at RFP Nos. 22-24.] Despite the breadth of Mr. Morgan's request, Defendant Imani produced five pages that it asserts are from his file and responsive to the RFPs, or states, with regard to the medical record requests (RFP Nos. 23-24), that it has no documents in its possession. The production fails to meet the requests and the requirements of federal law.

Under 49 CFR § 382.401, Defendant Imani is required to maintain records of Defendant Hadgu's pre-employment drug testing and any subsequent testing. Under 49 CFR § 391.51, Defendant Imani is required to retain the following records in Defendant Hadgu's file:

The qualification file for a driver must include:

(1) The driver's application for employment completed in accordance with § 391.21;

(2) A copy of the motor vehicle record received from each driver's licensing authority pursuant to § 391.23(a)(1);

(3) The certificate of driver's road test issued to the driver pursuant to § 391.31(e), a copy of the license or certificate which the motor carrier accepted as equivalent to the driver's road test pursuant to § 391.33, or the original of the written statement providing that the motor carrier determined the driver is not required by § 391.44(d) to complete a road test pursuant to § 391.44(d)(3)(ii)(A) and the original, or a copy, of the driver's certification required by § 391.44(d)(3)(i);

(4) The motor vehicle record received from each driver's licensing authority to the annual driver record inquiry required by § 391.25(a);

(5) A note relating to the annual review of the driver's driving record as required by § 391.25(c)(2);

(6)

(i) The medical examiner's certificate as required by § 391.43(g) or a legible copy of the certificate.

(ii) For CDL holders, beginning January 30, 2012, if the CDLIS motor vehicle record contains medical certification status information, the motor carrier employer must meet this requirement by obtaining the CDLIS motor vehicle record defined at § 384.105 of this chapter. That record must be obtained from the current licensing State and placed in the driver qualification file. After January 30, 2015, a non-excepted, interstate CDL holder without medical certification status information on the CDLIS motor vehicle record is designated "not-certified" to operate a CMV in interstate commerce. After January 30, 2015, and through June 22, 2025, a motor carrier may use a copy of the driver's current medical examiner's certificate that was submitted to the State for up to 15 days from the date it was issued as proof of medical certification.

(iii) If that driver obtained the medical certification based on having obtained a medical variance from FMCSA, the motor carrier must also include a copy of the medical variance documentation in the driver qualification file in accordance with paragraph (b)(7) of this section;

(7) A Skill Performance Evaluation Certificate issued by FMCSA in accordance with § 391.49; or the Medical Exemption document issued by a Federal medical program in accordance with part 381 of this chapter; and

(8)

(i) For drivers not required to have a CDL, a note relating to verification of medical examiner listing on the National Registry of Certified Medical Examiners required by § 391.23(m)(1).

(ii) Through June 22, 2025, for drivers required to have a CDL, a note relating to verification of medical examiner listing on the National Registry of Certified Medical Examiners required by § 391.23(m)(2).

49 CFR § 391.51. Defendant's production falls far short and does not include most of the documents required to be part of the qualification file under federal law and sought by Mr. Morgan. By way of a blatant example, no medical examiner's certificate was provided, despite the

11

requirement to maintain one. *Id.* The Court must order Defendant to produce the full file, or if it does not have these documents, to affirmatively state that failure in writing.

### C. **Defendant Hadgu's Personnel File**

In addition to the qualification file, Mr. Morgan sought Defendant Hadgu's personnel file and related information, including his pay incentives:

> **INTERROGATORY NO. 18:** Describe and explain in detail the method of calculating the pay, compensation, wages, salary, bonus, or commission for Mr. Hadgu since his employment with you.

> **REQUEST FOR PRODUCTION NO. 4:** Complete and clearly readable copies of the "Driver Personnel File" and/or any otherwise titled files on Mr. Hadgu or in reference to Mr. Hadgu's services from initial contract or employment with Imani Express, to the present date.

> **REQUEST FOR PRODUCTION NO. 25:** All documents relating to Mr. Hadgu.

[Ex. 4: Defendant Imani Responses at Interrogatory No. 18, RFP Nos. 4, 25.] Defendant objected to producing any documents in response.

Because Defendant Hadgu's personnel file is relevant and discoverable, Defendant Imani should be compelled to produce them. *Blount v. Wake Elec. Membership Corp.*, 162 F.R.D. 102, 106 (E.D.N.C. 1993) (compelling production of employee personnel file where the plaintiff claimed that the defendant employee's negligence, acting as an agent of the defendant employer, caused Plaintiff's injuries) (citing *Hawaii Corp. v. Crossley*, 88 F.R.D. 518, 522 (D. Haw. 1980)).

First, any records containing references to Mr. Morgan or to the facts underlying this case are directly related to the claims and defenses at issue. Furthermore, Mr. Morgan has alleged negligence claims against both Defendants, including negligent hiring and retention and negligent entrustment, and seeks punitive damages. As such, not only are pre-accident employment records discoverable, but post-accident records that may include counseling, warnings, or discipline that may have occurred after the accident are discoverable. *See generally*, Fed. R. Civ. Pro. 26. Finally,

12

these records are discoverable and relevant to the issue of the credibility of Defendant Hadgu and Defendant Imani's agents.

Records establishing the continued employment of Defendant Hadgu after he hit Mr. Morgan are directly relevant to Mr. Morgan's claims and are discoverable. Mr. Morgan alleges Defendant Hadgu's pattern and practice of operating semi-tractors in contravention of state and federal safety-related laws, along with Defendant Imani's awareness of this pattern and practice. As such, both Defendant Hadgu's and Defendant Imani's actions and inactions are relevant and probative of their conduct, including, but not limited to, their obvious disregard for state and federal safety laws and public safety. Defendant Imani's prior knowledge of Defendant Hadgu's propensity to ignore safety laws and policies designed to protect the public on the roadways – and its continued employment of Defendant Hadgu with that knowledge – are relevant to Mr. Morgan's negligence, negligent retention, and negligent entrustment claims.

Furthermore, as both Defendant Hadgu and one or more representatives of Defendant Imani will be witnesses at trial, their credibility is at issue and the requested information is discoverable. "Credibility of a witness . . . is always relevant." *Mills v. Grotheer*, 1998 OK 33, ¶ 4, 957 P.2d 540, 542. Defendant Hadgu has previously been cited for failing to abide by state and federal laws designed to promote public safety on roadways and has posed an undue risk of harm to the public. Defendant Hadgu's continued employment with Defendant Imani despite his citations is plainly relevant. Not only are the discipline and non-discipline *after* the accident relevant to issues in this case, but the truthfulness or untruthfulness of the respective testimony of Defendant Hadgu and Defendant Imani goes directly to the credibility of the witnesses who will testify at trial.

13

The requested records are relevant to Mr. Morgan's claim for punitive damages. Because of its awareness of Defendant Hadgu's pattern and practice of safety violations, Defendant Imani had reason to believe Defendant Hadgu would create an undue risk of harm to others. Despite this knowledge, Defendant Imani negligently continued to employ Defendant Hadgu and entrust him with a semi-truck despite Defendant Hadgu posing a danger to the public due to his utter disregard for laws designed to promote safety and Defendant Imani's own policies. Defendant Imani's prior knowledge of Defendant Hadgu's propensity to ignore laws and policies designed to ensure public safety on the roadways is directly at issue; however, as Mr. Morgan is seeking punitive damages, Defendant Imani's continued indifference to public safety – as can be demonstrated by records reflecting its continued employment of Defendant Hadgu well after his accidents and citations – are also relevant on the issue of punitive damages.

Finally, Defendant Hadgu's compensation is relevant to whether any incentive by Defendant Imani to ignore safety laws to deliver his load. *See Cudd Pressure Control, Inc. v. New Hampshire Ins. Co.*, 297 F.R.D. 495, 502 (W.D. Okla. Feb. 6, 2014) (production of types and amounts of bonuses paid during a five (5) year period and the methods used to calculate such bonuses); *Burke v. Ability*, 291 F.R.D. 343, 352-53 (D.S.D. May 31, 2013) (bonus and incentive information is relevant and discoverable). Compensation records are also relevant to demonstrating coercion or adverse employment actions under 49 C.F.R. § 390.5, which prohibits employers from inducing drivers to violate safety regulations through threats or withholding work opportunities.

Defendant Hadgu's personnel file, including compensation records, is highly relevant in this action. Therefore, the Court should order production of the same.

14

IV.    **FACTS, INCIDENT REPORTS AND ROUTE DATA REGARDING THE COLLISION AT ISSUE**
       **(DEFENDANT HADGU RESPONSE TO INTERROGATORY NO. 13; DEFENDANT IMANI RESPONSE TO INTERROGATORY NO. 8)**

Mr. Morgan issued requests regarding reports about the incident and route data to both Defendant Hadgu and Defendant Imani. From Defendant Hadgu:

> **INTERROGATORY NO. 13:**    State whether You received any charges, citations, or summons from any law enforcement officer for any reason on September 17, 2024, or at any other time due to the subject Accident alleged in Plaintiff's Petition. If yes, please state the exact offense cited, which law enforcement agency issued the citation, and the resolution of the citation or charges.

[Ex. 3: Defendant Hadgu Responses at Interrogatory No. 13.] In response to both, Defendant Hadgu stated that he was locating responsive information and documents and would supplement. It is now three months post response and Defendant Hadgu has not supplemented. The Court should order responses from Defendant Hadgu.

From Defendant Imani, Mr. Morgan sought the dispatch history for Defendant Hadgu the day of the collision:

> **INTERROGATORY NO. 8:**  Please state Mr. Hadgu's full dispatch history for September 17, 2024. In responding to this interrogatory, be certain to identify (i) the place and time of the beginning of the call, (ii) the place, time and duration of each stop, (iii) the route(s) taken, and (iv) the location of the final scheduled destination and the anticipated or scheduled time of arrival at that destination.

[Ex. 4: Defendant Imani Responses at Interrogatory No. 8.] Defendant Imani responded that it did not know Defendant Hadgu's stops or route. Defendant Imani should be required to explain why it does not know the answer to this simple Interrogatory.

V.    **OTHER ACCIDENTS INVOLVING DEFENDANT'S VEHICLES**
      **(DEFENDANT IMANI RESPONSE TO RFP NO. 18)**

Plaintiff sought documents regarding other accidents involving Defendant's vehicles:

**REQUEST FOR PRODUCTION NO. 18**:  All reports including, but not limited to, incident reports, police reports, etc., involving the Accident or any other accident

in which Defendant's vehicles were involved in within the past five years, including, but not limited to, all internal documents relating to personal injury law suits brought against Defendant within the same time period relating to accidents involving their drivers and/or vehicles.

[Ex. 4: Defendant Imani Responses at RFP No. 18.] Defendant Imani objected to relevance. However, Defendant Imani is making a motion *in limine* argument at the discovery stage, which is inappropriate. At this stage in the litigation, "[d]iscoverable information need not be admissible at trial." *Kunneman Properties LLC*, 2019 WL 5188355, at *2. Additionally, "[a]t the discovery phase of litigation 'relevancy' is broadly construed and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *AG Equip. Co.*, 2008 WL 5205192, at *1.

Oklahoma courts have repeatedly held that prior incidents are relevant in premises liability and negligence actions. *St. Louis-San Francisco Ry. Co. v. Powell*, 1963 OK 209, ¶ 11, 385 P.2d 465, 469 (evidence of other accidents admissible to show dangerous condition); *Cooper v. Bd. of Cnty. Comm'rs of Grady Cnty.*, 1996 OK CIV APP 85, ¶¶ 5-7, 921 P.2d 376, 378 (trial court erred in not considering other incidents to show notice of dangerous condition; prior accidents did not have to be identical). Additionally, " evidence of other accidents, . . . is potentially relevant to liability and punitive damages." *Leon v. FedEx Ground Package Sys., Inc.*, 313 F.R.D. 615, 618 (D.N.M. 2016). Therefore, the Court should compel Defendant to fully respond to RFP No. 18.

### VI. FACTUAL BASES FOR DEFENDANTS' AFFIRMATIVE DEFENSES (DEFENDANT HADGU RESPONSES TO INTERROGATORY NOS. 15, 21; RFP NO. 16; DEFENDANT IMANI RESPONSES TO INTERROGATORY NOS. 9, 22)

Mr. Morgan issued discovery to Defendants regarding their affirmative defenses. From Defendant Hadgu, Mr. Morgan sought:

**INTERROGATORY NO. 15:**        Do You assert that any mechanical failure or malfunction of any vehicle involved in the accident contributed to the subject Accident? If so, for each instance, please specify:

16

    a. The nature and extent of the failure or malfunction;

    b. The amount of time (in seconds) prior to the subject accident when Defendant first noticed the failure or malfunction; and

    c. Describe how the failure or malfunction caused or contributed to the subject accident.

**INTERROGATORY NO. 21:**     State each and every affirmative defense upon which You rely on in this case, specifically stating each fact that supports said affirmative defense, identifying any individual or entity who will provide testimony to support said affirmative defense and listing each document that you claim supports the affirmative defense.

[Ex. 3: Hadgu Responses at Interrogatory Nos. 15, 21.][3] From Defendant Imani, Mr. Morgan sought:

**INTERROGATORY NO. 9:** Do You, or any of Your agents, claim that any unexpected mechanical failure or malfunction of the Tractor or Trailer that Mr. Hadgu was operating caused or contributed to the cause of the Accident? If so, identify each and every alleged mechanical failure or malfunction and how it caused or contributed to the cause of the Accident.

**INTERROGATORY NO. 22:** For each and every affirmative defense which You have alleged in this case, state specifically the following:

    a. Each and every fact upon which You base each such affirmative defense;

    b. The identity of all individuals or entities who will provide testimony which supports each such affirmative defense; and,

    c. The identity of each and every document which You contend supports each affirmative defense You have pleaded.

[Ex. 4: Defendant Imani Responses at Interrogatory Nos. 9, 22.] Both Defendants wholly refused to respond to these clearly relevant Interrogatories.

Mr. Morgan's interrogatories are merely contention interrogatories. Under the Federal Rules, Mr. Morgan is permitted to ask contention interrogatories. Fed. R. Civ. P. 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates

---

[3]     In addition, Mr. Morgan sought documents related to the defenses. [Ex. 3: Defendant Hadgu Responses at RFP No. 16.]

to fact or the application of law to fact…."). Contention interrogatories "serve to narrow and define issues for trial and to enable the propounding party to determine the proof required to rebut the respondent's position." *Oklahoma v. Tyson Foods, Inc.,* 262 F.R.D. 617, 630 (N.D. Okla. 2009). Mr. Morgan is entitled to learn the bases for Defendants' defenses and contentions.[4]

Defendants' responses to Mr. Morgan's contention interrogatories are insufficient, and Mr. Morgan respectfully submits that the Court should compel Defendants to supplement the same.

### VII.   DEFENDANT IMANI'S FINANCIAL CONDITION IS DISCOVERABLE.
### (DEFENDANT IMANI RESPONSE TO RFP NO. 27.)

Mr. Morgan issued discovery seeking information about Defendant Imani's Financial Condition:

> **REQUEST FOR PRODUCTION NO. 27:**  Documents demonstrating Imani Express's gross revenues and net profits/losses, tax returns, balance sheets, and/or financial statements showing Imani Express's financial condition from 2022 to present.

[Ex. 4: Defendant Imani Responses at RFP No. 27.] Defendant Imani refuses to produce the same. However, Defendant Imani's financial condition is relevant to Defendants' claims for punitive damages. "Under Oklahoma law, the net worth of a defendant may be considered in assessing punitive damages. *Capstick v. Allstate Ins. Co.,* 998 F.2d 810, 821 (10th Cir. 1993). Information

---

[4]      If Defendants cannot back up their defenses with facts, Defendants (and their counsel) may be in violation of Fed. R. Civ. P. 11(b) whereby the party (or attorney) represents to the Court that:

> to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> \*                              \*                              \*
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

18

about a defendant's financial condition is relevant to punitive damages. *See, e.g., Oklahoma v. Tyson Foods, Inc*., No. 05-CV-329-GKF-PJC, 2009 WL 10271831, at *4 (N.D. Okla. March 13, 2009) (citing *Spaeth v. Union Oil Co. of California*, 710 F.2d 1455, 1460 (10th Cir.1983)) (under Oklahoma law financial information is relevant to punitive damage claims); *Cardtoons, L.C. v. Major League Baseball Ass'n*, 199 F.R.D. 677, 686 (N.D. Okla. 2001) (ordering discovery of financial information as relevant to punitive damages). The Court should order production of Defendant Imani's financial records as requested.

**VIII.**  **THE COURT SHOULD ORDER DEFENDANT HADGU TO VERIFY HIS DISCOVERY RESPONSES.**

Defendant Hadgu failed to submit verification with his discovery responses. The Fed. R. Civ. Pro. 33(b)(3) requires "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." This Court must compel Defendant Hadgu to provide verification for his responses.

<u>**CONCLUSION**</u>

For all the reasons set forth herein, Mr. Morgan respectfully submits that this Court should compel Defendants to produce full and complete discovery responses and produce responsive documents and information.

Respectfully submitted,

SMOLEN | LAW, PLLC

*/s/Donald E. Smolen, II*
Donald E. Smolen, II, OBA #19944
611 S. Detroit Ave.
Tulsa, Oklahoma 74120
P: (918) 777-4LAW (4529)
F: (918) 890-4529
don@smolen.law
*Attorney for Plaintiff*

19

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of October 2025, the above was submitted to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel of record whose appearances have been entered in this case.

*/s/Donald E. Smolen, II*