# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILLIAM MORGAN, an Individual, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MUEZ GEBREHIWOT HADGU, an ) <br> Individual; ) <br> IMANI EXPRESS, LLC, a Foreign ) <br> Limited Liability Company; ) <br> AMAZON.COM SERVICES, LLC, a ) <br> Foreign Limited Liability Company; and ) <br> AMAZON LOGISTIC, INC., a Foreign ) <br> Corporation; ) <br> ) <br> Defendants. ) | Case No.: CIV-25-36-GLJ |

### PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT OF DEFENDANT IMANI EXPRESS, LLC AND BRIEF IN SUPPORT

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Imani Express, LLC ("Defendant" or "Imani Express"), by and through its counsel of record, hereby submits this Partial Motion to Dismiss Plaintiff's Amended Complaint [Doc. 65] as it fails to state a claim upon which relief may be granted as to Imani Express. Defendant offers the following brief in support:

### INTRODUCTION

This case arises out of a September 17, 2024, collision between Plaintiff William Morgan and a tractor-trailer owned and operated by Defendant Hadgu, operated under Defendant Imani Express, LLC's DOT authority. The collision occurred on State Highway 51 and the Creek Turnpike Off-Ramp in Broken Arrow, Oklahoma, Wagoner County.

Plaintiff alleges that as Defendant Hadgu approached the intersection, he was unable to stop and caused a rear-end collision with Plaintiff. *See* Doc. 65, ¶¶ 65-67. Plaintiff alleges that the trailer being hauled by Defendant Hadgu was "owned or leased by [Amazon.com Services, LLC and Amazon Logistics, Inc. ("The Amazon Defendants")]…." *Id*., ¶ 54.

Based on the foregoing, Plaintiff has filed this lawsuit alleging various causes of action, *inter alia*, "Negligent Undertaking." *Id*., ¶¶ 138-145 ("Count VI. Negligent Undertaking"). In support of that claim, Plaintiff alleges that The Amazon Defendants and Defendant Imani Express "voluntarily undertook to render services they knew or should have known were necessary for the protection of the driving public…." *Id*., ¶ 139. However, as the claim suggests, Plaintiff contends that Defendant Imani Express (and The Amazon Defendants) negligently performed these undertakings, thereby causing the subject collision.

The Amended Complaint claims that these undertakings include the establishment and implementation of "…logistics, routing, scheduling….movement of freight on public roadways," "policies and procedures…and operational requirements governing the conduct of commercial drivers….," "…evaluating whether [] drivers were qualified, competent, and able to operate safely on public roadways," and, "Undertaking to direct, manage, oversee, and control….services performed by Defendant Hadgu….". *Id*.

Through these voluntary undertakings, Plaintiff alleges a legal duty was created, and that these Defendants breached their duties by failing to exercise reasonable care in performing these undertakings. Among other things, Plaintiff asserts these Defendants implemented routes and systems that created unsafe operational pressures, imposed

2

conditions that incentivized unsafe driving, failed to correct dangerous or noncompliant conduct, failing to implement adequate safety checks and safeguards to reduce foreseeable risks to the public, and creating an overall logistics and transportation framework that foreseeably increased danger to Oklahoma motorists. *Id*., ¶ 142.

Plaintiff's "Negligent Undertaking" claim is rooted in the Restatement (2d) Torts §§ 323 and 324A (a/k/a "Good Samaritan" or "Assumed Duty Doctrine"). In short, §§ 323 and 324A examines liability imposed upon a party for failing to use reasonable care after voluntarily providing services that are meant to protect. However, Oklahoma courts have not broadly adopted §§ 323 and 324A and have only applied it in a narrow range of circumstances (e.g., landlord-tenant, employer-employee, school-student). Defendant is unable to find a single Oklahoma case applying §§ 323 and 324A in a context like the instant matter.

Notwithstanding, the allegations describe The Amazon Defendants' systems and control, as opposed to any of Imani Express. *See e.g.*, Doc. 65, ¶¶ 15, 24-47. There are no allegations demonstrating what Imani Express did that could have created any duty for purposes of the claim. The Amended Complaint further fails to identify any undertaking by Defendant Imani Express that either increased a risk of harm, that Plaintiff relied upon, which could support a Negligent Undertaking, or otherwise allege "who did what to whom" to survive a 12(b)(6) Motion. For the reasons stated herein, and argued further below, Defendant Imani Express moves to dismiss Plaintiff's "Negligent Undertaking" claim as Plaintiff fails to state a claim upon which relief may be granted as a matter of law.

## ARGUMENTS AND AUTHORITIES

To survive a motion to dismiss pursuant to Rule 12 (b)(6), "a complaint must contain *sufficient* factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). A sufficiently pleaded complaint must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. A complaint that merely offers labels and conclusions, a formulaic recitation of the elements, or "'naked assertion[s]' devoid of 'further factual enhancement,'" will not survive a motion to dismiss. *Id*. (quoting *Twombly*, 550 U.S. at 557). While the Court is to accept all factual allegations as true at this stage, the Court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. at 678. Nor is the Court "'bound to accept as true a legal conclusion couched as a factual allegation.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

### I. PLAINTIFF'S NEGLIGENT UNDERTAKING CLAIM FAILS AS A MATTER OF LAW

This is a diversity case and therefore Oklahoma state law governs analysis of the underlying claim. *Compton v. Hale,* CIV-11-319-RAW, 2012 WL 5385680, at *1 (E.D. Okla. Oct. 2, 2012) (citing *Reid v. Geico Gen. Ins. Co.*, 499 F.3d 1163, 1167 (10th Cir. 2007). As with most jurisdictions, to allege a claim of negligence in Oklahoma, "Plaintiff must prove that (1) a duty was owed to him, (2) the duty was breached because it was not properly exercised or performed, and (3) the breach of duty proximately caused Plaintiff to suffer harm." *Underwood v. Jensen Farms*, 6:11-CV-348-JHP, 2013 WL 6903751 (E.D.

Okla. Dec. 31, 2013), *on reconsideration in part*, *Underwood v. Jensen Farms*, 6:11-CV-348-JHP, 2014 WL 934807 (E.D. Okla. Mar. 10, 2014) (citing *Thompson v. Presbyterian Hospital, Inc.,* 652 P.2d 260, 263 (Okla.1982)).

### A. THE COURT SHOULD DECLINE PLAINTIFF'S INVITATION TO EXPAND OKLAHOMA TORT LIABILITY

"A duty is a threshold question in any negligence case. Whether a duty exists presents a question of law which depends on the relationship between the parties and the general risks involved in the common undertaking." *McClure v. Sunshine Furniture*, 2012 OK CIV APP 67, ¶ 22, 283 P.3d 323, 328, *as corrected* (June 13, 2012) (citing *Wofford v. Eastern State Hospital,* 1990 OK 77, ¶ 8, 795 P.2d 516, 518).

As noted above, Plaintiff's "Negligent Undertaking" claim is rooted in the Restatement (2d) Torts §§ 323 and 324A.

- § 323 ("Negligent Performance of Undertaking to Render Services"): One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
    (a) his failure to exercise such care increases the risk of such harm, or
    (b) the harm is suffered because of the other's reliance upon the undertaking.

- § 324A ("Liability to Third Person for Negligent Performance of Undertaking"): One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
    (a) his failure to exercise reasonable care increases the risk of such harm, or
    (b) he has undertaken to perform a duty owed by the other to the third person, or

5

>   (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

The Restatement is a treatise that covers general legal principles and does not constitute binding law. Pertinent to this Motion, neither Restatement (2d) Torts §§ 323 nor 324A have been unreservedly adopted or widely applied by Oklahoma courts. To the contrary, §§ 323 and 324A have only been applied in narrow circumstances. *See e.g.*, *Underwood*, 2014 WL 934807 at *6 (citing *Frey v. AT & T Mobility, LLC,* 379 F. App'x 727, 729 (10th Cir. 2010) further citing *Lay v. Dworman*, 732 P.2d 455, 459–60 (Okla. 1986) (landlord has § 323 duty to minimize predictable security risks to his tenants), *Truitt v. Diggs*, 1980 OK 57, 611 P.2d 633, 636-37 (security company owes § 324A duty to parents when formulating recommendations regarding school security); *Wiles v. Grace Petroleum Corp.*, 671 P.2d 682, 687 (Okla. Civ. App. 1983) (employer has § 324A duty to maintain worksite security).

Critically, no Oklahoma court has applied §§ 323 and 324A to impose liability on a trucking company such as Defendant for injuries based on alleged negligence in carrying out internal safety, logistics, and routing policies and procedures. As Judge Payne cogently stated, "The Court is guided by the maxim that federal courts should not expand state law in the absence of clear guidance from the state's highest court." *Underwood*, 2013 WL 6903751, at *6. As Judge Payne did in *Underwood*, this Court should dismiss Plaintiff's claim for Negligent Undertaking for the same reasons.

Also, as a matter of public policy, the Court should dismiss Plaintiff's Negligent Undertaking claim. If "undertakings" were conceptually expanded to include ubiquitous

business functions such as logistics, performance metrics, scheduling, etc., as Plaintiff seeks to do so here, essentially every company would be "undertaking" duties to the public at-large. Core operational processes would become a launching point for tort liability. Expanding tort liability in this manner would have a chilling effect, as companies would be disincentivized from carrying out basic operations, including socially/economically beneficial measures, out of fear it could create a legal duty where one would otherwise not exist.

### B. WHO DID WHAT TO WHOM?

Plaintiff's Negligent Undertaking claim also fails for a basic reason: the Amended Complaint fails to explain who did what to whom. The underlying factual allegations describe *Amazon's* systems and controls, while only alleging that the role of Imani Express was to operate within that system. Yet, the claim is broadly asserted against "The Corporate Defendants," which include The Amazon Defendants and Defendant Imani Express. *See* Doc. 65, p. 26.

The Amended Complaint goes to great lengths to detail that The Amazon Defendants "have built, refined, expanded, and operated a nationwide logistics and transportation network…." *Id.*, ¶ 24. In this network, The Amazon Defendants "impose penalties on the drivers for late arrivals," which "ensure[s] that packages move[] through their system at the speed demanded by The Amazon Defendants…." *Id.*, ¶ 25. Plaintiff alleges that once companies like Imani become part of The Amazon Defendants' network, "The Amazon Defendants exert control…." by "requir[ing] any new motor carrier or driver to use the Amazon Relay program…." *Id.*, ¶¶ 36-37. The program allows Amazon to "track

7

timing and progress, monitor performance metrics," further controlling the details such that "[t]here is no meaningful opportunity for carriers or drivers to negotiate" the terms of the deliveries. *Id*., ¶ 38. Drivers and/or carriers must operate according to "Amazon-mandated routes, schedules, and technology requirements…." *Id*., ¶ 96(a).

Absent are any non-conclusory factual allegations demonstrating what Imani Express did, other than play a role within a system entirely built by Amazon. Plaintiff simply lumps in Imani Express by offering undifferentiated allegations against "The Corporate Defendants," and that they undertook to design, implement, and enforce logistics, routing, scheduling, and monitoring of delivery, further imposing policies, procedures, and performance metrics. Without any explanation of the role of Imani Express as to the Negligent Undertaking claim, Plaintiff jumps to the conclusion that the failures of Imani Express created unsafe operational pressures, imposed conditions that incentivized unsafe driving, failed to correct dangerous or noncompliant conduct, failed to implement adequate safety checks and safeguards to reduce foreseeable risks to the public, and created an overall logistics and transportation framework which foreseeably increased danger to Oklahoma motorists.

Both this Court and the Tenth Circuit have stated time and again that, "in a case against multiple defendants, 'it is particularly important ... that the complaint makes clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations ....'" *Key v. Exxon Mobil Corp.*, 508 F. Supp. 3d 1072, 1082 (E.D. Okla. 2020) (citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1250-51 (10th Cir. 2008)); *see also Johnson*

8

*v. Harris*, CIV-23-513-SLP, 2024 WL 3706500, at *5 n.8 (W.D. Okla. Aug. 7, 2024) ("Where a plaintiff sues multiple defendants, the complaint should explain *what* each defendant did to the plaintiff; *when* the defendant did it; *how* the defendant's actions harmed him or her; and, what specific right the plaintiff believes the defendant violated….").

As Plaintiff has failed to provide fair notice of any "Negligent Undertaking" by Imani Express through nonconclusory factual allegations, that claim should be dismissed as to Imani Express.

### C. PLAINTIFF'S ALLEGATIONS FAIL TO MEET ANY NEGLIGENT UNDERTAKING BY IMANI

Notwithstanding the foregoing, Plaintiff further fails to state a claim for Negligent Undertaking against Imani Express. As an initial matter, Plaintiff does not allege that Imani Express (or The Amazon Defendants) undertook any measures to render services directly to Plaintiff. As such, Plaintiff's Negligent Undertaking claim conceptually falls under § 324A (as opposed to § 323), which applies when "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking…." Under § 324A, one is subject to liability if "(a) his failure to exercise reasonable care **increases the risk** of such harm, or (b) he has **undertaken** to perform **a duty owed** by the other **to the third person**, or (c) the harm is suffered because of **reliance** of the other or the third person upon the undertaking."

As stated above, there are no allegations suggesting that Imani Express took any affirmative actions to undertake or render the alleged services in the Amended Complaint. The allegations clearly state that those were the undertakings of The Amazon Defendants, if anyone, rather than Imani Express. Imani Express did not "design, implement, [or] enforce logistics, routing, scheduling, monitoring, and delivery systems"; Imani did not "establish[] and impos[e] policies, procedures, performance metrics, and operational requirements" or "require[] use of the Amazon Relay Program"; and, Imani Express did not "Select[], approv[e], onboard[], and monitor[] commercial drivers for participation in Amazon's transportation network." And, to the extent Plaintiff is attempting to recast Imani's ordinary relationship with its driver as an "undertaking," Plaintiff already pleads that theory as negligent hiring/training/supervision regarding Defendant Hadgu.

Moreover, there are no factual allegations that Plaintiff *relied* on any of the alleged undertakings enumerated in the Amended Complaint. Rather, Plaintiff only alleges the existence of such undertakings based on the general understanding that these are required of any large company that transports goods. In a woefully insufficient way, Plaintiff claims that he, along with the general motoring public, only generally relies on commercial carriers to undertake some unspecified safety measures.

Likewise, with respect to an *increase in the risk of harm*, Plaintiff fails to explain how the alleged failures increased the risk of harm in such a way that caused the subject collision. *See* Doc. 65, ¶¶ 65-73. Nowhere in the Amended Complaint does Plaintiff tie his claim of Negligent Undertaking to the facts relevant to the subject collision. Even assuming Imani Express did have a role in the alleged undertakings, and further assuming the failures

10

in those undertakings created unsafe operational pressures, imposed conditions that incentivized unsafe driving, and created a framework that foreseeably increased danger to Oklahoma motorists, what does that have to do with Plaintiff's claims? According to Plaintiff, Defendant Hadgu "failed to slow, failed to maintain a proper lookout, failed to stop or yield…" allegedly causing the collision. *Id*., ¶ 67. At best, this constitutes the logical fallacy of *post hoc ergo propter hoc* and, "**The mere fact that injury occurs carries with it no presumption of negligence**." *Lang v. Amateur Softball Association of America,* 1974 OK 32, ¶ 10, 520 P.2d 659 (Okla. 1974); *City of Tulsa v. Harman*, 148 Okla. 117, ¶ 55, 299 P. 462, 470 (1931).

These are the kinds of naked assertions devoid of factual enhancement that constitute a formulaic recitation of the elements of a claim, which are insufficient to survive a Motion to Dismiss. Without more, 'a defendant seeking to respond to plaintiffs' conclusory allegations ... would have little idea where to begin.'" *Robbins*, 519 F.3d at 1248 (quoting *Twombly*, 127 S.Ct. at 1971, n. 10) (emphasis added).

WHEREFORE, Defendant, Imani Express, LLC respectfully requests that Plaintiff's Negligent Undertaking claim against it be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Respectfully Submitted,

s/ John H. Kim
Hailey M. Hopper, OBA #31093
John H. Kim, BA #31613
PIERCE COUCH HENDRICKSON
 BAYSINGER & GREEN, L.L.P.
1109 North Francis / P.O. Box 26350
Oklahoma City, OK  73126-0350
405-235-1611 – Phone
405-235-2904 – Fax
hhopper@piercecouch.com
jkim@piercecouch.com
***Attorneys for Defendants, Muez Gebrehiwot Hadgu and Imani Express, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2026, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Donald E. Smolen, II
James Fatigante
Smolen | Law, PLLC
611 S. Detroit Avenue
Tulsa, OK 74120
don@smolenlaw.com
jim@smolenlaw.com
*Attorneys for Plaintiff*

s/ John H. Kim